## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAMON LANDOR, | : | CIVIL NO. 1:12-CV-1331 |
| | : | |
| Petitioner, | : | (Judge Caldwell) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| B.A.BLEDSOE, et al., | : | |
| | : | |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

### I.  Introduction

This is one of two federal habeas corpus petitions filed by Damon Landor, a federal prisoner, protesting disciplinary hearings, and prison placement decisions that Landor believes have led to his placement in the Special Management Unit of the United States Penitentiary, Lewisburg.  In this particular habeas corpus petition, Landor invites us to examine the results of a prison disciplinary hearing conducted in December 2010 and March 2011, at the United States Penitentiary, Lewisburg.

Because we find that Landor failed to exhaust his administrative remedies; further find that the Petitioner was afforded a full panoply of procedural protections; and conclude that there is sufficient evidence to support the prison's finding of misconduct, it is recommended that this petition be denied.

## II.    Statement of Facts and of the Case

The Petitioner, Damon Landor, is currently incarcerated at the United States Penitentiary ("U.S.P.") Lewisburg, where he is serving a 120-month sentence imposed in the United States District Court for the Eastern District of Louisiana for a conviction of conspiracy to distribute and intent to distribute cocaine hydrochloride. (Doc. 9, Declaration of Michael S. Romano, Ex. 1 ¶ 2; Public Information Inmate Data, Attach. A.)  Prior to his transfer to the Lewisburg Penitentiary, Landor had been housed at the United States Penitentiary in McCreary, Kentucky.  On January 6, 2009, while Landor was confined at U.S.P. McCreary, Landor received an incident report (No. 1818253) for a serious prison infraction, possession of a weapon.  (Id., Romano Decl. Ex. 1 ¶ 3; Inmate Discipline Data – Chronological Record, Attach. B at 4, 7.) On January 21, 2010, a hearing was conducted on this infraction at U.S.P. McCreary, which resulted in an initial finding that Landor committed this offense.  (Id.)

Landor appealed the decision to the Mid-Atlantic Regional Director of the Bureau of Prisons, using the BOP's administrative remedy procedures and asked that the incident report be expunged.  (Id., Romano Decl. Ex. 1 ¶ 4; Regional Administrative Remedy Response to Remedy No. 577096-R1, Attach. C.)  On February 12, 2010, the Regional Director for the BOP's Mid-Atlantic Region

responded to Landor's appeal, vacating the sanctions initially imposed upon Landor and explaining to the Petitioner that:

> Upon review, we are remanding the incident report to the institution for further investigation. If you[r] behavior is determined to warrant such action, you will receive written notice of the charge(s), and will be afforded the opportunity to be present at any subsequent hearing.

(Id.)[1]

Three months later, on May 11, 2010, Landor was transferred from U.S.P. McCreary to U.S.P. Lewisburg. Once Landor arrived at the Lewisburg Penitentiary this disciplinary violation was rewritten and reissued on December 7, 2010, charging Landor with a Code 104 violation of "[p]ossession, manufacture, or introduction of a weapon, dangerous chemical, explosive or any ammunition." (Doc. 9, Romano Decl. Ex. 1 ¶ 7; DHO Packet Attach. G at 4-6.) A copy of the incident report was provided to Landor that same day. (Id.)

This revised incident report stated that:

---

[1]It also appears that criminal charges were also brought against Landor for possession of a weapon on January 6, 2009 at U.S.P. McCreary in United States v. Landor, No. 6:09-CR-00014 (E.D. Ky.). However, the government dismissed the charges after the Court suppressed Landor's confession to Lieutenant Hardin because the Lieutenant did not advise him of his Miranda warnings before he questioned him about the weapon, and then referred the case to the Federal Bureau of Investigation for eventual disciplinary action. See United States v. Landor, No. 6:09-CR-00014 (E.D. Ky. Nov. 17, 2009) (Recommended Disposition); United States v. Landor, No. 6:09-CR-00014) (E.D. Ky. Dec. 10, 2009)).

This is a rewrite of an incident report previously written on 1/6/2009. At approximately 9:15 a.m. on January 6, 2009, I conducted a routine cell search of cell 105 in Unit 6B which is assign[ed] to inmate Landor Reg. No. 28711-034 and [cellmate]. During the search of the lower locker that is assigned to inmate Landor I discovered a homemade manufactured weapon. The weapon was sharpened at one end to a point with a cloth handle and a lanyard, approximately 6 inches in length. That was concealed inside the crotch area of a pair of khaki trousers. Landor's [] name and reg. Number was affixed to the trousers that the homemade manufactured weapon was concealed on. Compound and Activities was notified. Inmate confessed to Lieutenant Hardin that the homemade manufactured weapon was his.

(Id., § 11.)

On December 7, 2010, a prison official, Robert Marr, contacted Landor in connection with his investigation of this incident report and advised Landor of his right to remain silent at stages of the disciplinary process. (Id., § 23.) Landor made no comment to Marr, but displayed an attitude that Marr later characterized as poor. (Id.) Landor then appeared before a Unit Discipline Committee (UDC) one day later, December 8, 2010, at which time, he stated, "No comment" regarding this alleged weapons possession incident. (Id. §§ 17-21.) At the close of this initial hearing the UDC found that Landor committed the prohibited act "[b]ased on the written account of the reporting staff member." (Id.) The UDC referred the incident report to a Discipline Hearing Officer (DHO) for a final hearing and recommended "appropriate sanctions not available to the UDC." (Id.)

At the conclusion of this initial UDC hearing, Landor was provided a Notice of Discipline Hearing before the DHO and an Inmate Rights at Discipline Hearing. (Id., Ex. 1 Romano Decl.; DHO Packet Attach. G at 7.) This Inmate Rights at Discipline Hearing form notified Landor that he had the following rights:

1. The right to have a written copy of the charge(s) against [him] at least 24 hours prior to appearing before the [DHO];

2. The right to have a full-time member of the staff who is reasonably available to represent [him] before the [DHO];

3. The right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence in [his] behalf, provided institutional safety would not be jeopardized;

4. The right to present a statement or to remain silent. [His] silence may be used to draw an adverse inference against [him]. However, [his] silence alone may not be used to support a finding that [he] committed a prohibited act;

5. The right to be present throughout the discipline hearing except during a period of deliberation or when institutional safety would be jeopardized. If you elect not to appear before the DHO, you may still have witnesses and a staff representative appear on your behalf;

6. The right to be advised of the DHO's decision, the facts supporting that decision, except where institutional safety would be jeopardized, and the DHO's disposition in writing; and,

7. The right to appeal the decision of the DHO by means of the Administrative Remedy Procedure to the Regional Director within 20calendar days of the DHO's decision and disposition.

(Id., Romano Decl. Ex. 1; DHO Packet Attach. G at 8.) Landor refused to sign this acknowledgment of his rights and also chose not to request a staff representative represent him at the DHO Hearing. (Id., Romano Decl. Ex. 1; DHO Packet Attach. G at 7.)

A final DHO hearing in this matter then occurred on March 23, 2011. (Id., Romano Decl. Ex. 1; DHO Packet Attach. G at 1, § I(B)). At this March 23 hearing, Landor once again waived his right to staff representation, indicated that he understood his rights at the hearing and denied the charge of possession of a weapon. (Id., §§II(A), III(A)-(B).)

> The record of the DHO hearing reveals that at this proceeding:
>
> Inmate Landor produced a picture of a homemade manufactured weapon that was approximately 6 inches long. Inmate Landor testified, "The weapon was 8 inches long not 6 inches. I was just put in the cell 3 days prior to the incident. I never received A&O [institution Admissions and Orientation Booklet] before the shot [disciplinary sanction]. My property was not in my locker. The officer didn't produce the pants as evidence, they didn't even take a picture of the pants. The Lady who wrote the shot is lying. She violated my rights."

(Id. § III(B).) While he mounted this defense at his March 23 disciplinary hearing, Landor requested no witnesses to testify on his behalf at the hearing. (Id., §III(C)(1)-(4).) At the close of this proceeding, the DHO concluded that Landor committed the act of inmate weapons possession, as charged. (Id., § IV.) The hearing officer based

this decision on the eyewitness account of the reporting officer. (Id., § V.) Regarding

Landor's defense, the DHO wrote:

> During the investigation you did not have a comment. During the UDC hearing you stated, "No comment." You stated you had not yet received Institution A&O. Therefore, implying you [were] not aware of the prohibited acts at USP McCreary. However, upon your arrival at USP McCreary you received a copy of the Admissions and Orientation Booklet. The booklet discusses the prohibited acts and the disciplinary severity scale. You stated you were only in the cell for three days prior to the incident. Upon further investigation it was shown that you were in cell 105 in unit 6B for five days. You also produced a picture of a manufactured weapon that was 8 inches long which would contradict the incident report if the DHO had the same picture. The DHO did not have a picture of the weapon. Therefore, the picture you have cannot be used to discredit the incident report. Based on M. Morgan's statement that she discovered a homemade manufactured weapon which was approximately 6 inches in length and was sharpened to a point with a cloth handle and a lanyard in a pair of your pants, which had your name and register number affixed to the. M. Morgan also stated, you confessed to Lieutenant Hardin that the homemade manufactured weapon was yours. Therefore, the DHO finds you committed the prohibited act of Possession of a Dangerous Weapon, Code 104.

(Id., §V.)

Finding that Landor had lied about these material matters at this hearing, the

DHO then sanctioned Landor to a forty-day disallowance of good conduct time, thirty

days disciplinary segregation, and a 180-day loss of visitation privileges. (Id. at 3, §

VI.) The March 27, 2011 DHO Report was delivered to Landor on March 30, 2011.

(Id., § IX.)

At the time of this disciplinary hearing, inmates like Landor had clearly defined administrative remedies available to them to challenge disciplinary hearing outcomes. With respect to inmate concerns regarding disciplinary hearing officer decisions and other matters, the Bureau of Prisons has adopted a three-tiered administrative appeal procedure which is set forth at 28 C.F.R. § 542.10, et seq. As part of this grievance process, inmates should first present their complaints to staff, and staff are obliged to attempt to informally resolve any issues before an inmate files a formal request for Administrative Remedy. Id. at § 542.13(a). At the second stage of this process, if an inmate is unable to informally resolve his complaint, the inmate may file a formal written complaint to the warden, on the appropriate form within 20 calendar days of the date on which the events which form the basis for the complaint took place. Id. at § 542.14(a). If the inmate's concern is not addressed to the inmate's satisfaction by the warden's response, the inmate may then file an appeal to the Regional Director within 20 calendar days. Id. at § 542.15(a). Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed to the General Counsel (Central Office) within 30 calendar days from the date of the Regional Director's response. Id. The Regional Director then has 30 calendar days to respond and the General Counsel has 40 calendar days to address the inmate's concern. Id. at § 542.18.

As these regulations state: "The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own imprisonment." 28 C.F.R. § 542.10(a). Under this grievance process: "If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures." Id. at § 542.10(c). Furthermore, under these procedures, no administrative remedy appeal is considered to have been fully exhausted until decided by the Central Office. 28 C.F.R. § 542, et seq.

In this case, following this disciplinary action, Landor engaged in halting, and procedurally flawed, efforts to appeal his disciplinary decision throughout the Spring of 2011, efforts that ultimately concluded without Landor's appeal ever being fully examined on its merits. Thus, Landor filed two procedurally flawed appeals to the Bureau of Prisons Regional Office in April and May, 2011, before finally successfully completed his first level appeal on June 6, 2011. That appeal was denied on June 9, 2011. (Id., Romano Decl. Ex. 1 ¶ 15; Administrative Remedy Generalized Retrieval Attach. H at 47.) This Regional Director appeal was denied on its merits and the Regional Director's response to Landor's grievance explained that:

> The record in this case reflects substantial compliance with Program Statement 5270.08, Inmate Discipline. The decision of the DHO was based upon the greater weight of the evidence and the sanctions imposed were consistent with the severity level of the prohibited act. The

sanctions imposed; 30 days disciplinary segregation, disallow 40 days good conduct time, transfer and 180 days loss of visiting privileges, were not disproportionate to your misconduct. Accordingly, your appeal is denied.

(Doc. 1, p. 25.)

Landor then appealed the Regional Director's decision to the Bureau of Prisons Central Office on July 22, 2011, but his initial Central Office appeal was rejected on August 22, 2011, on procedural grounds. Landor was then given leave to re-file his final administrative appeal. (Id., Romano Decl. Ex. 1 ¶ 16; Administrative Remedy Generalized Retrieval Attach. H.) Landor did not further pursue this appeal. In fact, while Landor has filed numerous other administrative appeals since August 22, 2011, prison records reveal that he never resubmitted his Central Office Appeal of the DHO decision of March 23, 2011. (Id., Romano Decl. Ex. 1 ¶ 18; Administrative Remedy Generalized Retrieval Attach. H.) Thus, it appears that Landor never fully completed this administrative appeals process with respect to this particular claim.

## III.   Discussion

### A.   The Exhaustion Doctrine May Bar Further Consideration of This Habeas Petition

In our view, as a threshold matter, this petition may suffer from a basic procedural flaw, since it appears that the Petitioner did not fully and properly exhaust his administrative remedies within the federal prison system prior to proceeding into

federal court.  Although 28 U.S.C. § 2241 contains no express exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." Gambino v. Morris, 134 F.3d 156, 171 (3d Cir.1998); see also, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir.2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir.1981). These exhaustion rules serve an important and salutary purpose.  The United States Court of Appeals for the Third Circuit requires administrative exhaustion of a claim raised under § 2241 for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir.1996); see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir.1988).

In this case, it appears that Landor has not exhausted his administrative remedies, since he never perfected his final Central Office appeal of this disciplinary decision at any time prior to filing this habeas corpus petition.  This apparent failure to exhaust may have substantive significance for Landor since it is well settled that: "Courts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates

he will be unsuccessful in his administrative appeals . . . ..' " Ross v. Martinez, No. 09-1770, 2009 WL 4573686, 3 (M.D.Pa. Dec. 1, 2009). Quite the contrary, rigorously applying these exhaustion requirements, court have consistently rejected habeas petitions challenging prison disciplinary decisions where the inmate-petitioners have failed to fully exhaust their administrative remedies. See, e.g., Johnson v. Williamson, 350 F. App'x 786 (3d Cir. 2009); Pinet v. Holt, 316 F. App'x 169 (3d Cir. 2009); Moscato v. Federal Bureau of Prisons, 98 F.3d. 757 (3d Cir. 1996).

As this Court has previously explained when dismissing a federal prisoner's habeas petition for failure to exhaust administrative remedies:

> In order for a federal prisoner to exhaust his administrative remedies, he must comply with 28 C.F.R. § 542. See 28 C.F.R. § 542.10, et seq.; Lindsay v. Williamson, No. 1:CV-07-0808, 2007 WL 2155544, at *2 (M.D.Pa. July 26, 2007). An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. 28 C.F.R. § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. 28 C.F.R. §§ 542.15(a), 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. See Sharpe v. Costello, No. 08-1811, 2008 WL 2736782, at *3 (3d Cir. July 15, 2008).

Miceli v. Martinez, No. 08-1380, 2008 WL 4279887, 2 (M.D.Pa. Sept. 15, 2008)

Therefore, as a threshold matter, we find that Landor's petition may be subject to dismissal as unexhausted.

However, we also note that in some instances "an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust [other] remedies." 28 U.S.C. §2254(b)(2). Applying this principle, even if we accepted his claim that this failure to exhaust should be excused, Landor's petition should still be denied because, as discussed below, this petition fails on its merits.

## B.    Landor's Petition Fails on Its Merits

Entirely aside from its procedural shortcomings, this petition fails on more fundamental, substantive grounds. In this habeas petition Landor launches a largely unarticulated two-fold constitutional assault upon this prison disciplinary decision, challenging that disciplinary process generally on procedural due process grounds, and asserting that the decision is substantively flawed since there is insufficient evidence to support a finding of misconduct on his part. Yet, Landor faces an exacting burden of proof in advancing these two constitutional claims.

### 1.    Procedural Standards for DHO Hearings

First, with respect to his procedural due process concerns, it is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the

full panoply of rights due a defendant in such proceedings does not apply." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. <u>Id.</u> at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. <u>Meyers v Alldredge</u>, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." <u>Meyers</u>, 492 F.2d at 306. In the past, inmates have often invited courts to set aside disciplinary hearing results based upon general assertions of staff bias. Yet, such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. <u>Lasko v. Holt</u>, 334 F. App'x 474 (3d Cir. 2009). Furthermore, in

14

the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F.App'x. 797, 799 (3d Cir. 2008), courts generally decline to strike down disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F.App'x 488 (3d Cir. 2007).

In the federal prison system, the Bureau of Prisons has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R. §541.10 et seq. These guidelines are specifically tailored and designed to meet the due process requirements outlined by the Supreme Court in Wolff. See Von Kahl v. Brennan, 855 F. Supp. 1413 (M.D. Pa. 1994). Under these regulations, when prison staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation. 28 C.F.R. §541.14. After investigation, the incident report is referred to a Unit Discipline Committee (UDC) for an initial hearing. 28 C.F.R. §541.15. The inmate, in turn, is entitled to notice of any proposed violation. The UDC may either reach a finding regarding whether a prohibited act was committed, or refer the case to the Discipline Hearing Officer (DHO) for further hearing. 28 C.F.R. §541.15(f). The DHO then has the authority to dismiss any charge, to find a prohibited act was committed, and to impose

any available sanction for the act. 28 C.F.R. §541.18. The DHO hearing is conducted pursuant to the procedures set forth at 28 C.F.R. §541.17.

Throughout this hearing process the inmate is provided with a series of procedural rights. For example, the inmate is entitled to notice of the alleged infraction. Specifically, the Warden must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. §541.17(a). The inmate is also entitled to assistance at DHO hearings. In particular, the Warden must provide the inmate with a full time staff member to represent him at the DHO hearing. 28 C.F.R. §541.17(b).

The inmate also has a series of procedural rights at the hearing itself. Thus, at the DHO hearing, the inmate is entitled to make a statement and present documentary evidence. The inmate also has the right to submit names of requested witnesses and have them called to testify and to present documents. While the DHO need not call repetitive witnesses or adverse witnesses, 28 C.F.R. §541.17(c), the DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available. The inmate has the right to be present throughout the DHO hearing except during deliberation or when institutional security would be jeopardized. 28 C.F.R. §541.17(d).

In addition, the regulations prescribe procedural standards for DHO decision-making. Thus, the regulations require that the DHO must consider all evidence presented at the hearing. The decision of the DHO must be based on the facts presented, and if there is conflicting evidence, it must be based on the greater weight of the evidence. 28 C.F.R. §541.17(f). Finally, the DHO must prepare a record of the proceedings. This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the DHO. The record must include a brief statement of the reasons for the sanction imposed. A copy of this record must be delivered to the inmate, ordinarily within 10 days of the hearing. 28 C.F.R. §541.17(g).

Given the panoply of procedural protections afforded to inmates by these regulations, courts have consistently held that when prison officials comply with these regulations they fully satisfy the requirements of procedural due process in this prison disciplinary setting. See, e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

## 2.    Substantive Standards Governing DHO Decisions

In his habeas petition, Landor also attacks the substance of the DHO decision. Like his procedural due process challenge, this substantive attack on the sufficiency of the evidence in this disciplinary hearing must meet a demanding legal standard to succeed. A prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that the decision of the DHO is entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986).

Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [DHO]." Freeman, 808 F.2d at

954.  As the Supreme Court has observed, the "some evidence" standard is a highly

deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456.

Applying this deferential standard, once the reviewing court determines there is "some

evidence" to support the finding of the DHO, the court must reject the evidentiary

challenge by the petitioner and uphold the finding of the DHO. Griffin v. Spratt, 969

F.2d 16, 22 (3d Cir. 1992); Thompson, 889 F.2d  501;  Freeman, 826 F.2d  at 954.  In

practice, courts have rarely condemned correctional disciplinary decisions as being

wholly lacking in evidentiary support, and have frequently concluded that disciplinary

findings are supported by the requisite degree of proof .  See e.g., Fiore v. Lindsay,

336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v.

Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F.

App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir.

2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

### C. Landor Was Afforded His Procedural Due Process Rights at the DHO Hearing, and the DHO Finding of Misconduct is Supported By Adequate Evidence

Judged against these standards, Landor's procedural and substantive challenges to this prison disciplinary proceeding fail. First, with respect to Landor's procedural due process claims, in this case it is evident that this prisoner's due process rights were fully vindicated. Landor received advance, written notice of the proposed disciplinary charges against him. Moreover, he was notified on multiple occasions of his procedural due process rights, including his right to have staff assistance and to request witnesses. In this case, Landor either exercised those rights, or expressly waived the rights he had in connection with this disciplinary hearing. Furthermore, once the hearing was concluded prison officials scrupulously complied with prison regulations, and afforded Landor his due process rights, by providing him with written decisions outlining the basis of their actions, and describing his appellate rights.

As for Landor's complaints regarding the fairness of the DHO proceedings, the Petitioner offers little to support this claim beyond a "generalized critique" of staff impartiality, which is as a legal matter insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Thus, the record of these disciplinary proceedings affirmatively reveals that Landor was given all of the procedural protections that due process requires in this

setting since he was afforded: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. at 563-67. Given the full array of procedural rights provided to Landor during these proceedings, his procedural due process claim fails. See e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

Nor can Landor successfully challenge the substantive outcome of the DHO hearing, since it is apparent that this decision is adequately supported by "some evidence" in the record. Indeed, with respect to this issue, we need only credit Landor's initial admissions that he possessed a knife in order to find that there was some evidence to support this disciplinary finding.

While the precise nature of Landor's attack upon the outcome of this disciplinary hearing is unclear, it may be that Landor protests the use of this statement taken from the Petitioner at the time of the discovery of the knife, because that the statement was later suppressed in Landor's criminal case on Miranda grounds. To the

extent that Landor invites us to extend <u>Miranda</u>'s exclusionary rule beyond criminal trials to prison disciplinary hearing, the short answer to this contention is that courts have repeatedly "declined to extend the exclusionary rule to proceedings other than criminal trials." <u>Pennsylvania Bd. of Prob. & Parole v. Scott</u>, 524 U.S. 357, 363(1998) (exclusionary rule does not apply to parole revocation hearing.)

More fundamentally, Landor's challenge to this disciplinary decision fails because, even if we completely excluded these admissions, the other evidence in this case, which consists of a statement by correctional staff that the knife was recovered from Landor's pants, would be sufficient to sustain this disciplinary finding. Furthermore, there is ample evidence to support the DHO finding that Landor lied at the DHO hearing about how long he had been housed in the cell at the time the knife was found in that cell, and dissembled when he stated that he had not received the prison rule book which placed him on notice that he could not possess a weapon in his cell. The hearing officer was entitled to consider these false exculpatory statements as evidence of consciousness of guilt. The hearing officer then properly drew an adverse inference from the fact that Landor made false statements at the disciplinary hearing about this episode and found on the basis of this adverse inference that the staff's statements regarding the recovery of a knife from Landor's pants was a more credible account of these events than the fabric of falsehoods presented by Landor.

Similarly, to the extent that Landor believes that the filing of disciplinary charges following the dismissal of the federal criminal charges lodged against him violated his rights under the Double Jeopardy Clause to the Fifth Amendment of the United States Constitution he simply errs. Quite the contrary, it is well-settled that "a prison disciplinary hearing is not a prosecution for Double Jeopardy Clause purposes." United States v. Newby, 11 F.3d 1143, 1144 (3d Cir. 1993). See, e,g., Crawford v. Lappin, 446 F. App'x 413, 415 (3d Cir. 2011); United States v. Colon, 246 F. App'x 153, 155 (3d Cir. 2007). Therefore, a double jeopardy challenge to this disciplinary action also fails in this case.

Accordingly, we conclude that there clearly was some evidence to support this disciplinary finding, even if we completely discounted Landor's confession. Furthermore, that disciplinary action does not offend constitutional due process or double jeopardy principles. Since there is an adequate legal and factual basis for this disciplinary finding, Landor's substantive challenge to this disciplinary action should also be rejected. See e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

### D. Landor Cannot Challenge His Prison Transfer in This Petition

Nor can Landor bring a federal habeas corpus petition based solely upon his dissatisfaction with his transfer to the Lewisburg Penitentiary. In this regard, it is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. Moody v. Daggett, 429 U.S. 78, 88 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976). Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." Id. Similarly, it has long been recognized that prison transfer decisions, standing alone, do not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. See, e.g., Hassain v. Johnson, 790 F.2d 1420 (9th Cir. 1986); Serrano v. Torres, 764 F.2d 47 (1st Cir. 1985). Accordingly, even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment; See, e.g., Gov't of Virgin Island v. Gereau, 592 F.2d 192 (3d Cir. 1979)(transfer from Virgin Islands to mainland); Rodriguez-Sandoval v. United States, 409 F.2d 529 (1st Cir. 1969)(transfer from Puerto Rico to Atlanta), and well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, to any  security classification, or to any particular housing assignment. See Olim v.

Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215 225 (1976);

Montanye, 427 U.S. at 242; Bulger v. U.S. Bureau of Prisons, 65 F.3d 48 (5th Cir.

1995); Marchesani v. McCune, 531 F.2d 459 (10th Cir.), cert.denied, 429 U.S. 846

(1976). Simply put, as a legal matter Landor has no constitutional right to choose his

prison, and may not, therefore, invite this Court to impose his prison choice on his

jailers. Nor can Landor be heard to complain that his misconduct at other prisons has

led to his transfer to the Special Management Unit at the Lewisburg Penitentiary.

"[D]ue process is not violated by placing an inmate in administrative custody based

on past conduct when that conduct provides a basis for predicting that the inmate will

present a danger if corrective measures are not taken. See Fraise v. Terhune, 283 F.3d

506, 523 (3d Cir. 2002). Nor is there any basis for [an inmate's] claim that placement

in the SMU based on previously disciplined conduct constitutes a double jeopardy

violation. See United States v. Newby, 11 F.3d 1143, 1144 (3d Cir.1993) ('[A] prison

disciplinary hearing is not a prosecution for Double Jeopardy Clause purposes.')"

Crawford v. Lappin, 446 F. App'x 413, 415 (3d Cir. 2011).

    Moreover, to the extent that his petition complains about his prison placement,

Landor misconstrues the scope and reach of a petition for writ of habeas corpus. The

writ of habeas corpus, one of the protections of individual liberties enshrined in our

Constitution, serves a specific, and well-defined purpose. The writ of habeas corpus

exists to allow those in the custody of the state to challenge in court the fact, duration and lawfulness of that custody. As the United States Court of Appeals for the Third Circuit has aptly noted: "The underlying purpose of proceedings under the 'Great Writ' of habeas corpus has traditionally been to 'inquire into the legality of the detention, and the only judicial relief authorized was the discharge of the prisoner or his admission to bail, and that only if his detention were found to be unlawful.' " Powers of Congress and the Court Regarding the Availability and Scope of Review, 114 Harv. L.Rev. 1551, 1553 (2001)." Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002). However, there is a necessary corollary to this principle, one which has long been recognized by the courts; namely, "[i]f a . . . prisoner is seeking [other relief], he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release-the traditional purpose of habeas corpus. In [such cases], habeas corpus is not an appropriate or available federal remedy." Preiser v. Rodriguez, 411 U.S. 475, 494 (1973).

Thus, where a prisoner wishes to constitutionally challenge some aspect of the conditions of his confinement unrelated to the fact or duration of his detention, courts have repeatedly held that the writ of habeas corpus is not the proper vehicle for bringing this legal challenge. For example, in Leamer v. Fauver , supra, the United States Court of Appeals discussed whether a habeas corpus petition was the

appropriate tool for an inmate to use when challenging a prison disciplinary placement or transfer decision, like the decision at issue in this case.  In terms that are equally applicable here the Court of Appeals held that these type of claims are not cognizable under habeas, stating:

> When read together, there is a logical and coherent progression of Supreme Court jurisprudence clarifying when [habeas and other civil rights relief] is unavailable: whenever the challenge ultimately attacks the "core of habeas" -the validity of the continued conviction or the fact or length of the sentence-a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under [other civil rights statutes] is appropriate.

Leamer, 288 F.3d at 542 .

Following Leamer, courts have often considered invitations by inmates to use the writ of habeas corpus to examine prison disciplinary placement decisions, including decisions to place federal inmate in special management unit programs. Without exception, these invitations have been declined by the courts as a legal exercise which falls beyond the proper scope of habeas corpus jurisdiction.  See e.g., Dickerson v. Diguglielmo, 306 F. App'x. 707 (3d Cir. 2009); Jupiter v. Warden, U.S.P. Lewisburg, 237 F. App'x. 726 (3d Cir. 2007); Levi v. Holt, 193 F. App'x. 172 (3d Cir. 2006); Beckley v. Miner, 125 F. App'x. 385 (3d. Cir 2005); Woodruff v.

<u>Williamson</u>, No. 06-2310, 2009 WL 703200 (M.D. Pa. March 12, 2009)(SMU placement); <u>McKettrick v. Williamson</u>, No. 06-543, 2006 WL 1307929 (M.D. Pa. March 22, 2006)(SMU placement).

Finally, as we have noted in Landor's companion case, <u>Landor v. Wilson</u>, No. 1:12-CV-1329 (M.D.Pa.), the simple fact remains that Landor's transfer to Lewisburg was not exclusively based on this weapons possession incident but rather took into account a series of infractions committed by Landor over time. In fact, Bureau of Prisons' records document an astonishing history of institutional misconduct by Landor, who amassed more than 50 disciplinary citations between 2005 and 2010, for offenses ranging from threats, assaults and weapons violations, to sexual misconduct, insolence and disobedience with staff instructions.

Judged in light of these facts, and considered in the context of these settled legal tenets, prison officials were justified in concluding that Landor's history of on-going institutional misconduct warranted additional security measures, like placement in the Special Management Unit. Further, Landor's petition fails as a legal matter since it is well established that the types of complaints made by Landor regarding his prison transfer simply do not sound in habeas. Therefore, this petition should be dismissed.

### III. **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue. The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of November 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge